Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

| | | |
|---|---|---|
| **BRIAN REALI** § | | **CIVIL ACTION NO:** |
| § | | |
| *Plaintiff* § | | |
| **v.** § | | |
| § | | |
| **FOREST RIVER, INC.** § | | |
| § | | |
| *Defendant* § | | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.   Parties**

1.   Plaintiff, BRIAN REALI, is an individual that are now and has been at all times a citizens of Moraga, state of California.

2.   Defendant, FOREST RIVER, INC., hereinafter "FOREST RIVER," is a citizen of Indiana and an Indiana corporation authorized to do and doing business in the State of Texas with its principal place of business located in Elkhart, Indiana and is a warrantor of the recreational vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case.

FOREST RIVER's agent for service of process is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN, 46204.

## II. Jurisdiction

3. This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III. Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

5. All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

6. On or about August 13, 2022, Plaintiff purchased a new 2022 FOREST RIVER CEDAR CREEK 345IK bearing VIN: 4X4FCRL24NS228706, hereinafter "CEDAR CREEK," from CAMPING WORLD RV SALES.

7. The sales price of the CEDAR CREEK was $104,544.38. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of

warranty under the applicable state law. See **_Hughes v. Segal Enterprises, Inc._, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986); _Chariton Vet Supply, Inc. v. Moberly Motors Co._, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B.  Implied Warranties

8. As a result of the sale of the CEDAR CREEK by Defendant to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the CEDAR CREEK would pass without objection in the trade under the contract description, and that the CEDAR CREEK was fit for the ordinary purpose for which such motor vehicles are purchased.

9. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.  Express Warranties

10. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the CEDAR CREEK, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the CEDAR CREEK had, in fact, repaired the defects.

11. Plaintiff' purchase of the CEDAR CREEK was accompanied by express warranties offered by the Defendant and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff' contract for purchase of the CEDAR CREEK.

12. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be

made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the FOREST RIVER's warranty booklet and owners manual. Also, the Defendant, FOREST RIVER, continued to agree to extended its express warranty with the Plaintiff to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D. Actionable Conduct

13. In fact, when delivered, the CEDAR CREEK was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiff' own words:

> "1. REAR A/C DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 2. KITCHEN ISLAND AND TABLE DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 3. SLIDE OUT AWNING BROKE IN SHOP;
>
> 4. LIVING ROOM AND BED ROOM LIGHTING DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 5. OVEN HAS CONSTAN HEAT BLOWING DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 6. KITCHEN LIGHTS DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 7. SHOWER DOOR AND TRACK DEFECTS, NON-CONFORMITIES AND CONDITIONS;
>
> 8. ANY DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED IN ANY AND ALL REPAIR

-4-

**ORDERS; AND**

**9.    THE CEDAR CREEK HAS BEEN OUT OF SERVICE OVER 150 DAYS."**

14.    Since purchase, Plaintiff has tendered their CEDAR CREEK to the Defendant for repairs on numerous occasions. Despite this prolonged period during which Defendant was given the opportunity to repair the CEDAR CREEK, the more significant and dangerous defects were not repaired. The Defendant has failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the CEDAR CREEK, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

15.    The defects experienced by Plaintiff with the CEDAR CREEK substantially impaired its use, value and safety.

16.    Plaintiff directly notified the Defendant of the defective conditions of the CEDAR CREEK on numerous occasions.

### VI.    Causes of Action

**COUNT 1:   VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

17.    Plaintiff re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

18.    The CEDAR CREEK is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

19.    Plaintiff is"purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

20.    The Defendant is a "manufacturer" and "distributor" as defined under the

Song-Beverly Consumer Warranty Act.

21. The sale of the CEDAR CREEK to Plaintiff was accompanied by an express written warranty.

22. The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the CEDAR CREEK and or can cause serious bodily injury or death.

23. Plaintiff has tendered their CEDAR CREEK to the Defendant for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

24. The Defendant has not repaired the non-conformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

25. Further, the sale of the CEDAR CREEK to Plaintiff was accompanied by implied warranties that the CEDAR CREEK was merchantable and fit for a particular use.

26. Defendant has breached the implied warranties of merchantability and fitness for a particular use because the CEDAR CREEK when sold would not pass without objection in the trade.

27. Despite its breach of the express and implied warranties, the Defendant has refused Plaintiff' demand for a refund or replacement.

28. By failure of the Defendant to remedy the defects as alleged above, or to issue a refund or replacement, the Defendant is in breach of their obligations under the Song-Beverly Consumer Warranty Act.

29. The Defendant's continuing breach of its obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, the Defendant is liable to

Plaintiff for civil penalties in an amount as set forth below.

30. Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of the Defendant's misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

31. Plaintiff re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

32. Plaintiff is "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

33. The Defendant is "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

34. The CEDAR CREEK is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

35. The express warranties more fully described herein above pertaining to the CEDAR CREEK, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

36. The actions of the Defendant as herein above described, in failing to tender the CEDAR CREEK to Plaintiff free of defects and/or refusing to repair and/or replace the defective CEDAR CREEK tendered to Plaintiff constitute a breach of the written and implied warranties

covering the CEDAR CREEK and hence a violation of the Magnuson-Moss Warranty Act.

37. The Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

38. As a direct and proximate result of the acts and omissions of Defendant as set forth herein above, Plaintiff has been damaged herein above in an amount in excess of $300,000.00 according to proof at trial.

39. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 3: BREACH OF EXPRESS WARRANTIES**

40. Plaintiff re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

41. The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff' CEDAR CREEK or those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendant issued an expressed written warranty which covered the CEDAR CREEK and warranted that the CEDAR CREEK, was free of defects in materials and work quality at the time of delivery.

-8-

42. As alleged above, the Defendant breached its warranties by offering for sale and selling as safe to Plaintiff a CEDAR CREEK that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

43. In breach of the foregoing warranties, the Defendant has failed to correct said defects.

44. The damages Plaintiff has suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the CEDAR CREEK; costs of repairs; expenses associated with returning the CEDAR CREEK for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 4:  BREACH OF IMPLIED WARRANTIES**

45. Plaintiff re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

46. The Defendant impliedly warranted that Plaintiff' CEDAR CREEK which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

47. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant is unreasonable and unconscionable and void under the principles of estoppel, because the Defendant knew the defects existed and might not be discovered, if at all, until the CEDAR CREEK, had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiff.

48. Because of the defects, Plaintiff' CEDAR CREEK is unsafe and unfit for use and has caused economic loss to the Plaintiff. Therefore, the Defendant breached the implied warranty of merchantability.

49. The damages Plaintiff has suffered are a direct and proximate result of Defendant' actions in this matter include, but are not limited to, diminution in value of the CEDAR CREEK; costs of repairs; expenses associated with returning the CEDAR CREEK for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII. Economic and Actual Damages

50. Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendant described herein above:

    a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the CEDAR CREEK;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

### VIII. Request for Rescission

51. Plaintiff seek the remedy of rescission of the sales contract which is requested in the following paragraph.

52. Plaintiff revoke their acceptance of the CEDAR CREEK for the reason that its defects substantially impair its value to Plaintiff and acceptance was based on Plaintiff' reasonable reliance on the false representations and warranties of Defendant that the defects in CEDAR CREEK would be repaired. Accordingly, Plaintiff seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendant as a result of the false representations and breaches of warranty set forth above. Plaintiff also seeks cancellation of the debt and now offers

-10-

to return the CEDAR CREEK to Defendant.

## IX.   Attorney Fees and Costs

53.     Plaintiff is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## X.   Multiple Damages

54.     The Defendant' conduct in violation of the Song-Beverly Consumer Warranty Act, Civil Code Section 1794, et seq, entitle Plaintiff to an award for civil penalties and multiple damages.

55.     Plaintiff has rightfully rejected or justifiably revoked acceptance of the goods and/or has exercised his right to cancel the sale pursuant to Sections 2711, 2712, and 2713 of the Commercial Code.

56.     Plaintiff had previously accepted the goods, and, therefore, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.

57.     The Defendant's failure to comply was willful and, therefore, the judgment should include, in addition to the amounts recovered, a civil penalty which shall not exceed two times the amount of actual damages.

## XI    Prayer

58.    For these reasons, Plaintiff pray for judgment against the Defendant for the following:

   a.    For general, special and actual damages according to proof at trial;

   b.    Rescinding the sale of the 2022 FOREST RIVER CEDAR CREEK 345IK bearing VIN: 4X4FCRL24NS228706 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

   c.    For incidental and consequential damages according to proof at trial;

   d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

   e.    Any diminution in value of the CEDAR CREEK, attributable to the defects;

   f.    Past and future economic losses;

   g.    Prejudgment and post-judgment interest;

   h.    Damages for loss of use of CEDAR CREEK;

   i.    Civil Penalties and/or Punitive damages;

   j.    Damages for mental anguish;

   k.    Attorney fees;

   l.    Costs of suit, expert fees and litigation expenses; and

   m    All other relief this Honorable Court deems appropriate.

## XII    Demand for Jury Trial

59.    Plaintiff hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdalton.law
(337) 371-0375

ATTORNEY FOR PLAINTIFF